IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KATRINA M. MOFFATT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-226 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Donetta W. Ambrose |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I. Synopsis

This matter comes before the Court on the parties' cross-motions for summary judgment, which have been filed pursuant to Federal Rule of Civil Procedure 56. Doc. Nos. 9 & 11. The Court has jurisdiction in this case pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the standards applicable under 42 U.S.C. § 405(g). For the reasons that follow, the Defendant's motion for summary judgment (*Document No. 11*) will be denied, and the Plaintiff's motion for summary judgment (*Document No. 9*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the decision of the Commissioner of Social Security ("Commissioner"), and a remand for further administrative proceedings.

### II. Procedural History

Plaintiff Katrina Mae Moffatt ("Moffatt") protectively applied for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f] on April 21, 2008, alleging disability as of April 10, 2008. R. at 108, 118. The

1

application was administratively denied on July 3, 2008. R. at 60. Moffatt responded on August 15, 2008, by filing a timely request for an administrative hearing. R. at 65. On June 24, 2009, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge John Kooser (the "ALJ"). R. at 7. Moffatt, who was represented by counsel, appeared and testified at the hearing. R. at 9-39. Elaina Kertanic ("Kertanic"), an impartial vocational expert, also testified at the hearing. R. at 39-44. In a decision dated July 28, 2009, the ALJ determined that Moffatt was not "disabled" within the meaning of the Act. R. at 48-59. The Appeals Council denied Moffatt's request for review on January 19, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1. Moffatt commenced this action on February 17, 2010, seeking judicial review of the Commissioner's decision. Doc. Nos. 1 & 3. Moffatt and the Commissioner filed motions for summary judgment on June 12, 2010, and July 14, 2010, respectively. Doc. Nos. 9 & 11. These motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable

2

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d

3

955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of

4

administrative law. That rule is to the effect that a reviewing court, in dealing
with a determination or judgment which an administrative agency alone is
authorized to make, must judge the propriety of such action solely by the grounds
invoked by the agency. If those grounds are inadequate or improper, the court is
powerless to affirm the administrative action by substituting what it considers to
be a more adequate or proper basis. To do so would propel the court into the
domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. The ALJ's Decision

In his decision, the ALJ determined that Moffatt had not engaged in substantial gainful activity subsequent to the date of her application. R. at 53. Moffatt was found to be suffering from degenerative disc disease of the lumbar spine with disc herniations, chronic low back pain with radiculopathy, and recurrent depression. *Id.* These impairments were deemed to be "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii). *Id.* The ALJ concluded that Moffatt's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 53-54.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Moffatt's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). The claimant must have the ability to sit or stand as needed every one half hour, and cannot do more than occasional climbing, balancing, or kneeling;

5

she cannot be exposed to occupational hazards such as unprotected heights, dangerous machinery or open flames, and is limited to simple, routine, repetitive tasks, performed in a low stress work environment, with only occasional interaction with others.

R. at 54-55.[1] Moffatt had previously worked as a dish washer and a line cook for two different restaurants. R. at 124. Kertanic classified the dish washer position as an "unskilled,"[2] "medium"[3] position and the line cook position as an "unskilled," "light"[4] position. R. at 40. Because Moffatt was deemed to be capable of engaging in only "sedentary" work activities, it was determined that she could not return to her past relevant work. R. at 57.

Moffatt was born on October 2, 1986, making her twenty-one years old as of her application date and twenty-two years old as of the date of the ALJ's decision. R. at 11, 57. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). She had a "limited"[5] education and an ability to communicate in English. R. at 57. Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Moffatt could work as a document preparer, ticket checker or surveillance system monitor.

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

[5] An individual with a "limited" education generally has the skills expected of an individual who has dropped out of school between the seventh and eleventh grades. 20 C.F.R. § 416.964(b)(3).

6

R. at 58. Kertanic's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[6] R. at 41.

## V. Discussion

Dr. James Liszewski, Moffatt's primary care physician, referred Moffatt to Dr. Stuart Anderson, an orthopedic surgeon, for a consultative appointment in order to resolve pain that she had been experiencing in her back. Dr. Anderson examined Moffatt on April 17, 2008. R. at 230. Moffatt complained of persistent pain in her back and left leg which had lasted for approximately three years. R. at 231. She stated that her duties as a dish washer had exacerbated her back pain, and that her employer had insisted that she continue working even though she could not move properly.[7] R. at 316. Dr. Anderson recommended that Moffatt undergo a magnetic resonance imaging ("MRI") scan of her back. R. at 230-231. An MRI scan conducted on April 22, 2008, revealed that Moffatt was suffering from "posterior central disc herniations." R. at 224. Shortly thereafter, Dr. Anderson determined that Moffatt had "degenerative disc disease" of the lumbar spine. R. at 229. Moffatt testified at the hearing that this diagnosis had prompted her to apply for SSI benefits. R. at 16.

Dr. Paul Fox, a non-examining medical consultant, evaluated Moffatt's medical records in connection with her SSI application. On June 30, 2008, Dr. Fox opined that Moffatt could

---

[6]At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

[7]The description of Moffatt's subjective complaints contained in Dr. Anderson's treatment note was corroborated by Moffatt's testimony at the hearing. Moffatt testified that her employer (*i.e.*, the owner of the restaurant) had expected her to work even though her duties had been causing her back pain to worsen. R. at 16.

7

engage in a limited range of light work activity involving no exposure to hazardous work conditions and only occasional climbing, balancing, stooping, kneeling, crouching or crawling. R. at 260-262. He indicated that Moffatt could stand or walk for up to two hours, and sit for up to six hours, during the course of an eight-hour workday. R. at 260. At the time that he rendered his consultative opinion, Dr. Fox had not been presented with conflicting physical capacity assessments from Moffatt's treating physicians. R. at 263.

Dr. Liszewski examined Moffatt on October 29, 2008. R. at 277. In a treatment note prepared on that occasion, Dr. Liszewski observed:

> There are no signs of severe neurologic impingement such as weakness or paralysis. I think a conservative approach is fine at this point, besides the patient is not interested in back surgery. She seems to be seeking disability, however, and does not seem motivated to get treatments done as she has been putting off the epidural steroid injections. I believe that she could work up to 15-20 hours per week in a sedentary job without lifting, but she would have to change position frequently. I signed her medical disability form for three months with these restrictions. Patient was advised to have epidural steroid injections.

R. at 277. Moffatt's reluctance to undergo more aggressive treatment is extensively documented in the record. Treatment notes supplied by UPMC[8] Horizon–Shenango's Pain Management Center indicate that Dr. Evelyn Oteng-Bediako had suggested epidural steroid injections as a treatment option for Moffatt, but that Moffatt had been refusing the injections.[9] R. at 270. Moffatt testified at the hearing that she was scheduled to undergo epidural steroid injections on July 1, 2009, at the Meadville Pain Clinic. R. at 19. She further testified that she was "terrified"

---

[8]The term "UPMC" refers to the University of Pittsburgh Medical Center. R. at 274-275.

[9]Moffatt and Dr. Oteng-Bediako apparently had other disagreements concerning Moffatt's treatment regimen. In a letter dated June 11, 2008, Dr. Oteng-Bediako recommended that Moffatt seek treatment with a different physician. R. at 320. She also informed Moffatt that no further prescriptions for opioid medications would be provided by her office. *Id.*

8

of back surgery even though it had been suggested by Dr. Liszewski. R. at 19-20.

On March 15, 2009, Dr. Anderson completed a "medical source statement" form describing Moffatt's physical limitations. R. at 283-285. He reported that Moffatt could lift objects weighing up to three pounds on only an "occasional" basis, and that she could sit, stand or walk for no more than one hour during the course of an eight-hour workday. R. at 283-284. Dr. Anderson indicated that Moffatt's pushing and pulling abilities were "limited," and that she could "never" engage in bending, kneeling, stooping, crouching, balancing or climbing activities. R. at 284. He further opined that Moffatt's impairments had adversely affected her reaching and handling abilities.[10] R. at 285.

At the hearing, Moffatt testified that she could only sit or drive for approximately ten to twenty-five minutes before pain would start shooting down her leg. R. at 13, 26. She stated that she could stand for roughly thirty to forty-five minutes before experiencing sharp leg pains. R. at 26. Moffatt explained that, during the course of a typical day, she would need to lie in a reclining position two to three times for intervals ranging from thirty to forty-five minutes. R. at 31. She declared that "severe pain" would result if she were to be prevented from reclining at this frequency. *Id.* at 31-32.

In response to questions posed by Moffatt's counsel, Kertanic testified that an individual who could lift no more than three pounds could work as a ticket checker or surveillance system monitor, but not as a document preparer. R. at 43-44. She further stated that an individual did not need to bend, kneel, stoop, crouch, balance or climb in order to work as a ticket checker or

---

[10] It is not clear whether Dr. Anderson believed Moffatt's fingering abilities to be similarly limited. In response to an inquiry as to whether Moffatt's impairments impacted her fingering abilities, Dr. Anderson answered both "Yes" and "No." R. at 285.

9

surveillance system monitor. R. at 44. Nevertheless, Kertanic explained that someone who regularly needed to lie down two to three times per day for intervals of thirty minutes would be unable to perform the duties of these positions. R. at 43. According to Kertanic, an individual could not maintain gainful employment even if he or she needed to recline only partially, since such a reclining accommodation would essentially preclude him or her from reaching a keyboard. *Id.*

In his decision, the ALJ rejected the limitations identified by Dr. Liszewski and Dr. Anderson by stating as follows:

> I recognize that Dr. Liszewski opined in October 2008 that the claimant is limited to only part-time, sedentary work involving no lifting (Exhibit B-10F). However, this physician's office records do not support such a restricted assessment. Moreover, that limited assessment also appears inconsistent with his statement regarding the claimant's lack of motivation to obtain treatment and her apparent effort to obtain disability. I note also that Dr. Anderson, her treating specialist, assessed in April 2009 that the claimant is essentially disabled in view of her extremely limited residual functional capacity. Again, however, Dr. Anderson's assessment is significantly inconsistent with his various physical examinations which have shown no neurological compromise, no impairment in the claimant's gait, and benefit in the past from medication such as Neurontin and physical therapy (Exhibits B-5F, B-11F, and B-14F).

R. at 57. In rejecting the opinions of Dr. Liszewski and Dr. Anderson, the ALJ did not rely on countervailing medical evidence. Indeed, Dr. Fox's consultative opinion was referenced by the ALJ only for the purpose of establishing that Moffatt's impairments did not meet or medically equal a Listed Impairment. R. at 54. The ALJ relied on Moffatt's unwillingness to follow the recommendations of her treating physicians as a basis for finding her testimony to be lacking in credibility. R. at 56-57.

The crux of Moffatt's argument is that the ALJ erred in failing to accord significant

10

weight to the opinions expressed by her treating physicians.[11] Doc. No. 10 at 5-8. Moffatt also contends that the ALJ did not properly evaluate her testimony at the hearing. *Id.* at 9-13. A careful review of the record reveals that the ALJ's decision is not "supported by substantial evidence." 42 U.S.C. § 405(g).

It is axiomatic that the Commissioner cannot reject the opinion of a treating physician without specifically referring to contradictory medical evidence. *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986). Moreover, an administrative law judge lacks the expertise to ascertain a claimant's residual functional capacity from raw medical data. *Rivera-Torres v. Secretary of Health & Human Services*, 837 F.2d 4, 6-7 (1st Cir. 1988); *Barton v. Astrue*, 549 F.Supp.2d 1106, 1122-1123 (E.D.Mo. 2008); *Brown v. Barnhart*, 285 F.Supp.2d 919, 931-933 (S.D.Tex. 2003); *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000); *Gathright v. Shalala*, 872 F.Supp. 893, 898 (D.N.M. 1993). The ALJ violated both of these precepts by rejecting the opinions of Dr. Liszewski and Dr. Anderson based solely on his own interpretation of the relevant treatment notes and without reference to countervailing medical evidence.

Admittedly, the ALJ's residual functional capacity assessment was more restrictive than that suggested by Dr. Fox. R. at 54-55, 260-262. Nonetheless, Dr. Fox's consultative opinion cannot vindicate the ALJ's findings. First of all, the ALJ did not expressly rely on Dr. Fox's assessment as a basis for discrediting the assessments provided by Dr. Liszewski and Dr.

---

[11] The record contains evidence that Moffatt suffers from depression and bipolar disorder. R. at 286-304. At the hearing, Moffatt testified that her mental impairments generally impacted only her interactions with members of her immediate family, such as her husband and her mother. R. at 20-24. The ALJ adequately accounted for Moffatt's mental limitations by providing that she could work only in a "low stress work environment" involving "only occasional interaction with others." R. at 55. Because the disputed issues in this case center on Moffatt's physical limitations, there is no need for the Court to focus on her mental limitations. Nonetheless, Moffatt remains free to introduce additional evidence concerning her mental limitations during the course of the upcoming administrative proceedings. *Reefer v. Barnhart*, 326 F.3d 376, 381 (3d Cir. 2003).

11

Anderson. R. at 55-57. The Court is powerless to remedy this deficiency by substituting its own evidentiary findings for those of the ALJ. *Fargnoli*, 247 F.3d at 44, n. 7. In addition, the United States Court of Appeals for the Third Circuit has declared that it is generally improper for an administrative law judge to credit the opinion of a non-treating, non-examining medical consultant when that opinion contradicts an opinion rendered by a treating physician. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). There are, of course, limited circumstances in which a treating physician's opinion is so "internally contradictory" that it is reasonable for the Commissioner to accord it less weight than that given to an opinion provided by a non-examining medical consultant. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Those circumstances were not present in this case, since Dr. Fox did not even have access to the opinions of Moffatt's treating physicians when he indicated that she could engage in light work activities. R. at 263. An assessment provided by a non-examining medical consultant is of limited probative value where the record indicates that the consultant was unaware of countervailing medical evidence.[12] *Wildman v. Astrue*, 596 F.3d 959, 967-968 (8th Cir. 2010).

Under the Commissioner's regulations, work can constitute "substantial gainful activity" even if it is performed on a part-time basis. 20 C.F.R. § 416.972(a). For this reason, a claim can sometimes be denied at the first step of the sequential evaluation process if the claimant is working on a part-time basis, even if he or she has impairments which prevent him or her from performing the duties of a full-time job. 20 C.F.R. § 416.920(a)(4)(i). At the *fifth* step of the

---

[12]Of course, Dr. Fox's consultative report was still competent medical evidence entitled to some consideration. *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992).

12

process, however, the Commissioner cannot satisfy his burden without proving the existence of jobs in the national economy that a claimant could perform on a *full-time* basis. *Bladow v. Apfel*, 205 F.3d 356, 359-360 (8th Cir. 2000); *Kelley v. Apfel*, 185 F.3d 1211, 1213-1215 (11th Cir. 1999); *Carlisle v. Barnhart*, 392 F.Supp.2d 1287, 1290 (N.D.Ala. 2005); *Grove v. Barnhart*, 382 F.Supp.2d 1104, 1111 (S.D.Iowa 2005); *Moody v. Barnhart*, 295 F.Supp.2d 1278, 1283 (N.D.Ala. 2003).

As of October 29, 2008, Dr. Liszewski believed Moffatt to be capable of working for only fifteen to twenty hours per week. R. at 277. He expected this situation to persist for at least three months. *Id.* In order for a claimant to be statutorily disabled, both his or her *medically determinable impairment* and his or her *inability to work* must last (or be expected to last) for the twelve-month period established by the Act. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Consequently, Moffatt could not establish her entitlement to SSI benefits solely on the basis of Dr. Liszewski's treatment note. Nevertheless, Dr. Anderson's report of March 15, 2009, was rendered more than four months later. R. at 283-285. Dr. Anderson identified limitations which, if fully credited, would have rendered Moffatt disabled. *Id.* Because the record contained evidence that Moffatt's perceived "disability" had lasted longer than the three months described in Dr. Liszewski's treatment note, the ALJ made no mention of the Act's twelve-month durational requirement in denying Moffatt's claim. R. at 57.

When a conflict in the evidence exists, the Commissioner is "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). In this case, however, the ALJ dismissed the opinions of two treating physicians without relying on conflicting medical evidence. For this reason, the ALJ's decision

cannot stand. The only remaining question is whether an immediate award of benefits is warranted, or whether the appropriate remedy is a remand for further administrative proceedings. A judicially-ordered award of benefits is proper only where the record has been fully developed, and where the evidence clearly points in favor of a finding that the claimant is disabled. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). Moffatt has not satisfied this standard. As an initial matter, it is not entirely clear whether Moffatt's perceived "disability" lasted long enough (or was expected to last long enough) to satisfy the Act's twelve-month durational requirement. After questioning her motivation to work, Dr. Liszewski indicated that Moffatt's inability to perform the duties of a full-time job might not last more than three months. R. at 277. Moreover, even if Moffatt's perceived "disability" was sufficiently long to satisfy the Act's durational requirement, an issue would remain as to whether her inability to work was attributable to her refusal to follow the recommendations of her treating physicians. The record contains evidence that Moffatt was refusing epidural steroid injections which could have alleviated her pain. R. at 270. Moffatt acknowledged at the hearing that she had refused to undergo back surgery even though Dr. Liszewski had recommended it. R. at 19-20. Absent an "acceptable" reason for a claimant's refusal of treatment, his or her failure to follow prescribed treatment recommendations can constitute a basis for the denial of benefits. 20 C.F.R. § 416.930(a)-(c). An immediate award of benefits would be improper in this case, since it is unclear whether the treatment options rejected by Moffatt would have restored her ability to work. *Sharp v. Bowen*, 705 F.Supp. 1111, 1123 (W.D.Pa. 1989). Accordingly, the proper remedy in this case is a vacation of the

14

Commissioner's decision, and a remand for further administrative proceedings.[13]

## VI. Conclusion

For the foregoing reasons, further administrative proceedings are required. It will be the prerogative of the Commissioner to determine how to proceed on remand. He will have the option of ordering a consultative medical examination in the event that the limitations identified by Moffatt's treating physicians are deemed to be too extreme to be credible. 20 C.F.R. § 416.919a. A consultative medical examiner often brings both impartiality and expertise to the adjudicatory process. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985). While the Commissioner is free to seek additional medical opinions, he is not free to reject the opinions of Moffatt's treating physicians based solely on the lay opinion of an administrative law judge. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

The Commissioner's motion for summary judgment will be denied, and Moffatt's motion for summary judgment will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further administrative proceedings. The decision of the Commissioner will be vacated, and the case will be remanded to him for further proceedings consistent with this opinion.

---

[13]The fourth sentence of 42 U.S.C. § 405(g) provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KATRINA M. MOFFATT, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 10-226 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) | Judge Donetta W. Ambrose |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 30th day of Sept., 2010, for the reasons stated in the foregoing memorandum opinion, IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment (*Document No. 11*) is **DENIED**, and that the Plaintiff's Motion for Summary Judgment (*Document No. 9*) is **DENIED** to the extent that it requests an award of benefits but **GRANTED** to the extent that it seeks a vacation of the decision of the Commissioner of Social Security, and a remand for further administrative proceedings. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security is hereby **VACATED**, and the case is remanded to him for further administrative proceedings.

Donetta W. Ambrose
United States District Judge

cc: All counsel of record